Okay, our next case for argument, United States v. Aleshire, Mr. Ruth. May it please the Court, my name is Robert Ruth. I represent the defendant appellant Roger Aleshire. This is a direct appeal from the denial of a motion to suppress. There are two principal issues that I want to talk about in oral argument. First is that the district court made serious factual mistakes in its ruling, and second that the district court misapplied this court's ruling in United States v. Peck. Actually, under the standard of review, we look through what the district court did to what the issuing magistrate did. So the focus should be on the application affidavit for the search warrant and whether the state judge, and we defer to the state judge in evaluating that affidavit to determine whether it is sufficient for the issuance of a warrant. Right, we don't have any information from the state judge, but we know that the look at something like this. This, the magistrate judge and the district court judge. Okay, are you familiar with the McIntyre case from this court, which explained how the standards of review work in this context? I am familiar, I'm not that specific case, but I am familiar with the standard, and I guess why I want to point to what the district court did is because my argument is that... McIntyre holds that what the district court did is irrelevant. Then I'll move on. That's one reason why Judge Sykes asked whether you were acquainted with McIntyre. Your whole presentation in this case is incompatible with McIntyre. Well, we are, we are under McIntyre, and the Supreme Court's holding which McIntyre implements, attempting to review, and with considerable deference, the state court's decision. That is, the decision of the district court. We're not supposed to be asking separate questions about the district court, the federal district court. Well, here's what we have. We have a warrant application with certain factual allegations, and the bottom line is those factual allegations don't add up to probable cause, and what it really comes down to is, are we going to take the factual allegations at face value, or are we going to read something into that? That's part of the problem. It's not what are we going to do. Is it legally permissible for a state magistrate, in issuing a warrant, to conclude that a young child who talks about what happened in a dream is just using that as a circumlocution to her parents, because that's how she feels most comfortable describing something? Is it absolutely forbidden for a person issuing a magistrate to think that that's what's happening? That's the question. I would phrase it like this. I would say it is forbidden for a issuing judge to not take this child's statement at face value, and this issuing judge did not take the statement at face value. Now, what is it that the issuing judge should do? The issuing judge shouldn't have issued the dream, and she didn't hedge on that. She didn't say anything to suggest that she was uncomfortable. So the judge should just take judicial notice that nothing a child describes as a dream ever could be real? No. Presumably the judge should take judicial notice that everything Sigmund Freud said in his career is transparently false. No, I think that if you have, on these facts, where all you have is a dream, a girl saying, I was asleep and I dreamt it, and then you have an eyewitness in the application who says, I was there and I saw that all he did was look for headphones. On those facts, you have to accept that dream at face value. You can't then say without anything else. So you were saying that everything Sigmund Freud said in his career is transparent nonsense. No, I'm not saying that. There are a lot of people who think it's nonsense, but the possibility to believe that things expressed in dreams have significance about the real world is awfully hard to sustain. Well, except that if we had, say, a statement from a psychiatrist about what Sigmund Freud said, I mean, are we supposed to, as lawyers and judges, do dream interpretation? Can we just say without more, we will just infer that this is of some Freudian statement by the evidence from a psychiatrist who would say a child of this age would not have used dream language to describe what was actually happening. Is there such evidence? Well, I would say there's no evidence that a child of this age would use dreams. No, just answer my question, and then you can tell me whether you think the answer is legally significant or not. But if you would answer my question, we will be a step closer. Well, there is no such evidence, and I'm not in a position to put in any sort of evidence. It's all reviewed on the application. The application is, it's just, that's what it is. That's the only thing that we're permitted to look at, and there's nothing in there to assist us or to assist the issuing magistrate in deciphering a dream, in deciding whether is this a, you know, we know what the definition of a dream is, right? It's when you're asleep, it's your imagination. All right, is that what we have here, or do we have something else? Dreams can mean an awful lot of things, but on just the fact that we have a child who says she's asleep, a mother who says she sleeps hard, who reports that she dreamt something, and then we have the fact of an eyewitness who says, I saw him come in the room and all he did was look for If she, the eyewitness has to have been there, if her testimony is worth anything, and she said he looked for the headphones, and she said nothing else. You're still overspinning, counsel. Try again. Well, the question was, did he look for the headphones? And she said, yeah, I guess. You can reject her statement. Is this the daughter of the perpetrator? This is the daughter of Roger Elsher. Who was asked whether her dad was in the room that night looking for I guess. Well, you say the perpetrator. And from the vantage point that we're reviewing this decision by the magistrate, or the state judge, I should say, the question is whether the state judge is entitled to, and whether it's reasonable for the state judge to infer that that's support for his presence in the room, but reject the cover story that he was giving. And it seems to me it's very reasonable under the circumstances to infer that, particularly with his criminal record. You say the cover story, though, but it isn't presented as that's what he told her. It's presented as that's what she witnessed. It's presented that to place him in the room, and to discredit his cover story that he was only looking for headphones. Well, actually, or at least that's one interpretation. It's a reasonable interpretation based on what else we know about your client, which is that he's a convicted sex offender. No. Well, you were correct there. Now, not a convicted sex offender of a child sexual assault, though. It's just a sex offense from 20 years ago. Okay. So that doesn't show that... In which two sexual assault offenses involving children were dismissed. The child cases were dismissed. There was, I think, two penetration or something. It doesn't say adult or child. So there's, I don't think you can infer from that a sexual interest in children. But he couldn't have been convicted on the basis of what was in the affidavit. But probable cause is a much lower standard. It's only, you know, is it enough to warrant a search, right? Right, sure. And it's actually, it's even, it's harder... How much of that do you need? You have the dream. You have, he does have a history of sexual offenses. What more do you need? Well, I say you can't get past, it's not reasonable to look at this dream at anything other than face value. The child reported a dream. The mother reports that she sleeps hard. And with that, without something more... There is something more. Well, the 20-year-old sexual conviction. And the offenses, the charges that were not... The dismiss charge? Right. I don't think that counts for anything, a dismiss charge. No, you're wrong. Well, I mean, if you think of dismiss... Look, you have to put everything together. The fact that people are charged with something and not punished, that's data. It's not, obviously, you can't convict on the basis of dismiss charge. But when you put everything together, you know, he's in the room. She has these dreams. She has had a dream in the past, apparently, that was real, thought was real. They're these little pieces together. They don't add up to proof by a preponderance or beyond a reasonable doubt. But the question is, would a responsible magistrate think there's enough here to warrant a search, which is really not such a big deal, right? A search? Well, I think it is a big deal. Why is it such a big deal? Well, it's an invasion of privacy. Did they destroy property? I mean, we heard a case last week in which an eight-man SWAT team broke into a house with flashbacks, causing a great deal of damage and fear to the two females there. But that's not the nature of the search here. But it's a tremendous invasion of privacy to search through someone's digital files. It's not negligible. That's why probable cause is required. The question is whether probable cause poses a higher burden on the prosecutors, as you're suggesting. Well, I concede that it's a low burden. But my point is, you can't get past taking this dream at face value without something more, more than we have. That's the bottom line. And if you think that we can, well, then we lose. It's that simple. But we've got a hard-sleeping child who unequivocally says it was a dream. And so where do we get off trying to infer that it was anything but a dream? We have no reason to doubt her credibility. There's nothing in there to doubt it. And we have someone with a 20-year-old sex offense that we know none of the details, except that we know it wasn't involving a child, because that part was dismissed. Now, if we're going to infer from dismissed charges, well, then I guess that's a real problem for us. I don't think you can infer anything from a dismissed charge without something more. That's the bottom line, Your Honor. Thank you. Okay, well, thank you very much, Mr. Ruth. Ms. Altman? Thank you, Your Honor. Good morning. May it please the Court, my name is Elizabeth Altman, and I represent the United States in this case. The search warrant in this case was primarily based on the reports of a 9-year-old child, but it did establish probable cause. And the reason it established probable cause is because it was corroborated in several ways. Of course it's true that a dream is not reality, and the child did report it as a dream. I believe Mr. Ruth said, all you have is a dream, and that's just simply not the case. And we're not doing dream interpretation in this case, as he alleged as well. What we have is an event that the child reported as a dream. Maybe she thought it was a dream, maybe she was embarrassed by the situation and didn't want to tell her parents what really happened, that she was awake. Whatever the case is, she reported it as a dream. Did anyone suggest having a psychologist talk to her? She was forensically interviewed at a later point. No, not later, but before the warrant was sought. No. Wouldn't that have been a good idea? Possibly. I mean, who knows? You could say, well, a dream expert talked to her, and she said, you know, who knows what the results could have been. And even if she did really say, no, I think it's a dream, I think it's a dream, the agents were still, it was still allowable for them to say, you know what, we don't think it's a dream, and we're going to spend some time investigating this to see if we can come up with some reasons as to why perhaps it was not a dream. So don't know that having an expert talk to her would have moved the ball forward or backward at all. She reported it as a dream, and the agents, you know, that was their initial reaction to it. Okay, it was a dream. But how do we know that that dream might have actually happened? And there are several ways that they do. First of all, just even the nature of the report, it's something that's very plausible. She didn't say, a princess came into my bedroom and was playing cards with a pony. She said, a man I know came into a room where I was and pulled down my underwear and took pictures. All of those things are certainly possible things, and in this case, you know, likely things, and several aspects of what she reported as a dream were able to be corroborated. Excuse me. She had spent the night at his house. The daughter did confirm he was in the bedroom. Yes, she said it was, yeah, I guess. As Judge Sykes indicated, it could be, yeah, I guess that's why he was there. Yeah, that's what I'm going to tell you. Yeah, this is all you're going to get from me. I don't think the yeah, I guess is corroboration, that he didn't take the pictures as the defendant would like you to believe. And perhaps the most damning aspect that was contained in the affidavit is that he admitted he was in the bedroom with a flashlight. That flashlight could have just as likely been, and the court could have thought that it was, a flash from a cell phone. All of those things were in the affidavit that the court considered and found probable cause. In addition to the corroboration that the agent was able to do, we do know that on at least one occasion, she reported something as a dream when the mother did say, yes, it happened. She said, I dreamt that I was in your bed, and the mom said, no, you were here. So we know that on at least one other occasion, she had had a similar experience like this. Not obviously the pulling down the pants experience, but experiencing something as a dream. And we do know that he has a prior sex offense and was a registered sex offender. Based on these factors, the state judge who signed the warrant found that there was probable cause. The district court also, based on these factors, found that there was probable cause, and I submit that this court should as well. On the chance this court doesn't, I believe that the warrant is still salvageable by good faith. The narrow, narrow scope shows just how careful the officers were being. Generally in child pornography warrants, as the court can see from the second warrant that was issued in this case, when officers go in on suspected child pornography, they ask for everything under the sun. Disks, computers, phones. They didn't do that in this case. The little girl reported a picture by a cell phone, and that's all the officers sought to take was the cell phones. So they did act in good faith, even if this court would conclude that there was not probable cause in the warrant. And for those reasons, your honors, I would respectfully request that the court affirm the defendant's conviction, unless you have further questions for me. Okay, thank you very much, Ms. Altman. So, Mr. Ruth, you want to rebut? Two things I want to point out. First of all, in response to you, Judge Sykes, you at one point referred to him, I think, as the perpetrator, implying that these photos actually did take place. I should note that no such photos were ever found in any search. This is an examination of what was presented to the state judge. You're right, you're right, but I just wanted to make that clear. But more to the legal question. So I guess it really, I think this comes down to is, how thin are we willing to slice this question of probable cause? Well, wouldn't you agree that the crime he was convicted of, producing child pornography, is a serious crime? Most definitely. Well, shouldn't there be a kind of sliding scale of probable cause, that the more serious the criminal activity that the government is concerned with, the less probable cause has to be shown? I hope not. I hope it never becomes the law. Why? Why? I mean, it's already been watered down to so little that to then say even less? Well, what if someone you know is suspected of terrorist activity? Would you require as high a showing of probable cause as if he were being, as if they thought he was a bicycle thief? Well, what I would say, if that were the inclination of the court, it would make much more sense to stop calling it probable cause and call it something else like reasonable suspicion. Because the problem is, right off the bat, we use the term probable cause. Well, it's not probable cause. It's far less than probability, right? It doesn't have to be 51%. So I think we should... Less than probability. Probability runs from 0 to 100%, right? I mean, well, I think it's 51%. What does it mean to be less than probable cause? Well, to me, less than probable cause would be like reasonable suspicion. If we keep calling probable cause less and less and less, there's no room for reasonable suspicion. We have decided that there's reasonable suspicion as a lesser standard than probable cause. But slowly, the probable cause has got closer and closer to mere reasonable suspicion. I think it would be a terrible mistake to, if we're going to do that, if you think that's justified to say the more serious the crime, the less the standard. What is the difference between reasonable suspicion and probable cause? It's harder and harder to tell. They're just a pair of, you know... But I think that we're obligated to have a difference or else it's absurd. It's absurd to have two different standards and then keep calling what's mere reasonable suspicion probable cause. If we're going to water it down to reasonable suspicion, we should at least say that's what we're doing instead of pretending that mere suspicion is probable cause. Thank you. Okay. You were appointed, were you not? That's correct. Pardon? That's correct. Yes, well we thank you for your efforts.